859 P.2d 146

**STATE of Arizona, Appellee,**

v.

**Clinton Lee SPENCER, Appellant.**

**Nos. CR–91–0001–AP, CR–91–0187–T/AP.**

Supreme Court of Arizona,
In Division.

April 8, 1993.

Reconsideration Denied June 15, 1993.

Grant Woods, Atty. Gen., by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and R. Wayne Ford, Asst. Atty. Gen., Phoenix, for State of Arizona.

Dean W. Trebesch, Maricopa County Public Defender by James M. Likos, Deputy Maricopa County Public Defender, Phoenix, for Clinton Lee Spencer.

## OPINION

MARTONE, Justice.

Spencer was convicted of murder in the first degree, other offenses, and sentenced to death. This is his automatic and direct appeal under Rule 31.2(b), Ariz.R.Crim.P. and A.R.S. § 13–4031. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On May 20, 1989, a passing motorist found the body of a badly burned young woman, wearing white boots but otherwise naked from the waist down. She was lying on her right side with her arms behind her, as if she had been bound. She was identified through dental records as Shandora Johnson–Morrow, a twenty year old hair stylist and community college student. She had been stabbed twice in the back. One wound was fatal. The presence of blood in her mouth, nose, and air passages indicated that she had lived for some time, aspirating blood through her punctured lung. A medical examiner testified that the absence of carbon monoxide in her blood indicated that death preceded the burning. He could not, however, say she was not alive when set on fire. Shallow breathing, or a very fast burning fire due to the use of an accelerant, could also account for the absence of carbon monoxide. There was evidence that an accelerant had been used. The medical examiner also testified that semen had been deposited in her vagina no longer than six hours before death.

The evidence showed that Johnson–Morrow worked at a beauty salon in Tempe until 9:00 p.m. on Friday, May 19, 1989. Stacey Moore was also working that day. The two young women made plans to meet some of Johnson–Morrow's friends at a nightclub. They left the salon in separate cars and stopped at a convenience store so that Moore could withdraw cash from an automatic teller machine (ATM). When Moore came out of the store she saw the defendant, Clinton Spencer, speaking to Johnson–Morrow, who was seated in her silver-gray 1982 Honda Accord. Spencer was apparently asking for a ride because Johnson–Morrow, who had an open and trusting nature, then unlocked the passenger door of her car and let Spencer in. Johnson–Morrow smiled at Moore, indicating that everything was okay, and Moore saw Johnson–Morrow shake Spencer's hand and introduce herself. The women then went to the bar and parked next to one another. Spencer did not go into the bar but stayed in the parking lot. He said that a friend had his car and was going to meet him.

Moore left the bar at 11:30 p.m. and at that time saw Spencer sitting on Johnson–Morrow's car. Moore's car was equipped with a car-alarm and would have beeped had he sat on her car. As Moore walked toward her car, Spencer approached her and repeatedly badgered her for a ride back to the convenience store, requests which Moore firmly refused. She got in her car and, as she pulled out of the parking space, Spencer tried to open the locked passenger door. Moore got away. Moore testified that he "made me nervous" but not nervous enough to report the incident to anyone connected with the nightclub. She assumed Johnson–Morrow was safely inside with a number of friends. Unfortunately, Johnson–Morrow left the bar alone approximately 15 to 20 minutes later and none of her friends ever saw her alive again.

Pictures taken by an automatic camera show Spencer using the ATM at a bank in Mesa shortly before 1:00 a.m. Bank records indicate that he was using Johnson–Morrow's bankcard and was attempting to withdraw money from her account. The card was rejected because the machine was not connected to the main system. At that time Martin Sekenski pulled in to use the ATM. He saw a silver foreign car parked in front of the ATM with a white person in the front passenger seat. A black man—who Sekenski identified as Spencer—was standing by the machine and stared at Sekenski as he approached. Sekenski asked if the machine was working and Spencer said it would not accept his card. Spencer then got in the silver car and drove off. Sekenski tried to use the machine and found that it was out of service. He went to another bank and used the ATM there. As he left, he saw the same car, with the black male driver and the white passenger, pull in. Photos taken by an automatic camera at this ATM show Spencer and Johnson–Morrow at the machine. Spencer forced Johnson–Morrow to withdraw $140—the maximum amount possible—from her account; the last picture in the series shows the victim handing the money to Spencer.

Later that morning Spencer contacted an undercover police officer, whom he knew as Rudy, and offered to sell him a car. The police officer, who was part of a sting operation, met Spencer and purchased the victim's car for $180. He described Spencer's mood as jovial. At this videotaped meeting Spencer spoke about stealing the car from a young woman at around 1:00 a.m. He made references to the convenience store, the bar, and a second young woman who had a car that beeped. The officer posing as Rudy noticed that Spencer had a cut on a finger on his left hand and asked him about it but received no answer. Blood discovered in the victim's car matched Spencer's and not the victim's.

The next day the police discovered that the car was sought in connection with a murder. At that point, Spencer again contacted Rudy. He wanted to borrow some money and a gun because he said he needed to get out of town. Rudy arranged another meeting and arrested Spencer.

After Spencer waived his *Miranda* rights the police interrogated him. He

first insisted that he had been alone in his hotel room the entire weekend. Later, after confronted with the existence of a videotape of the car sale, he confessed to stealing the car after getting a ride back to the convenience store with Johnson–Morrow. He claimed, however, that it was all part of a plan devised by Rudy, and that Rudy had kidnapped the victim. When confronted with the information that Rudy was a police officer, Spencer expressed disbelief.

Several months later, after a story on Spencer's involvement in the murder appeared in the *New Times,* Spencer contacted the reporter and told a third tale. He claimed that he and the victim were secret lovers and that after they drove back to the convenience store from the bar, she was kidnapped by masked men brandishing Uzis and AK–47s.

Spencer was charged with first degree murder, kidnapping, theft, and trafficking in stolen property. At trial, witnesses testified that several months before Johnson–Morrow's murder, Spencer expressed an intent to take his wife out to the desert, rape her, stab her, and set her on fire in order to destroy the evidence.

Spencer's motion for judgment of acquittal under Rule 20, Ariz.R.Crim.P., was denied. The jury returned guilty verdicts on all counts. The court found several statutory aggravating factors: the conviction of another offense for which a sentence of life imprisonment was imposable, the prior conviction of a felony involving the use or threat of violence against a person, the expectation of pecuniary gain, and the especially heinous, cruel or depraved nature of the murder. It also found no mitigating factors and sentenced Spencer to death. He was sentenced to maximum consecutive terms for the other offenses.

## II. ISSUES PRESENTED

Spencer raises the following issues:

### A. *Trial Issues*

1. Did the trial court err in denying Spencer's Rule 20 motion for judgment of acquittal?

2. Did the trial court err in admitting Spencer's prior statement concerning his intent to take his wife out in the desert and rape, stab and burn her?

3. Did the trial court err by failing to *sua sponte* give instructions on lesser included offenses of first degree murder?

### B. *Sentencing Issues*

1. Aggravating factors.

a. Did the trial court err in finding that Spencer had previously been convicted of an offense for which a life sentence was imposable (A.R.S. § 13–703(F)(1))?

b. Did the trial court err in finding that Spencer had previously been convicted of an offense involving the use or threat of violence against a person (A.R.S. § 13–703(F)(2))?

c. Did the trial court err in finding that Spencer murdered the victim in expectation of pecuniary gain (A.R.S. § 13–703(F)(5))?

d. Did the trial court err in finding that Spencer committed the murder in an especially heinous, cruel or depraved manner (A.R.S. § 13–703(F)(6))?

2. Mitigating Factors.

a. Did the trial court err in failing to find any mitigating factors?

b. Did the trial court err in balancing the mitigating against the aggravating factors?

3. Constitutional claims.

a. Was Spencer's right to equal protection violated because a judge rather than a jury determined the existence of the aggravating factors in this case?

b. Does the Arizona death penalty statute violate the Eighth Amendment to the United States Constitution?

## III. DISCUSSION

### A. *Trial Issues*

1. *Rule 20 Motion*

 Spencer claims that the trial court erred in denying his Rule 20 motion for

judgment of acquittal on the murder and kidnapping charges. This court has stated that:

> A judgment of acquittal is appropriate when "no substantial evidence [exists] to warrant a conviction." Substantial evidence is more than a mere scintilla and is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt."

*State v. Nunez*, 167 Ariz. 272, 278, 806 P.2d 861, 867 (1991) (citations omitted). In applying this standard, the court views the evidence and the inferences which can be drawn from the evidence in the light most favorable to sustaining the verdict. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

■ Spencer argues that the evidence against him is circumstantial, and therefore insufficient to support the verdicts. There is nothing inherently suspect about circumstantial evidence. The evidence here was more than sufficient to support the verdicts.

Both pictures and eye-witness testimony indicate that Spencer was with the victim and in control of her car less than two hours before the murder. He withdrew all the money from her bank account. The most reasonable inference that can be drawn from the evidence is that he was also in control of the victim's movements. Another possible inference—that Johnson–Morrow willingly gave Spencer, a stranger, all the money she could—is patently unreasonable. Tire tracks found at the murder scene were consistent with those of the victim's car, and Spencer, only a few hours later, was videotaped selling the car to undercover police officers. Again, the most reasonable inference is that after emptying her bank account, Spencer drove the victim out to the desert against her will, raped her, stabbed her, set her on fire, and drove off in her car. The evidence *is* more than sufficient to support the verdicts.

### 2. *Admissibility of Prior Statement*

■ Spencer next argues that the trial court erred in admitting his prior statement that he wanted to stab and burn his wife. He argues that this statement should have been excluded because Rule 404(b), Ariz. R.Evid., prohibits the use of evidence of other crimes, wrongs or acts to prove character and action in conformity with that character. But the evidence was not offered to prove Spencer's bad character. It was offered to prove identity, plan and premeditation, purposes which expressly support the admission of "other crimes" evidence under Rule 404(b).

Nevertheless, Spencer claims that the evidence should have been excluded pursuant to Rule 403, Ariz.R.Evid., because its prejudicial effect outweighed its probative value. Rule 403 weighing is best left to the trial court and, absent an abuse of discretion, will not be disturbed on appeal. *State v. Robles*, 135 Ariz. 92, 95, 659 P.2d 645, 648 (1983). Here, the statements were clearly relevant to prove matters at issue in the case and the jury was given a general instruction regarding what can properly be proved with evidence of prior bad acts under Rule 404(b). There was no abuse of discretion.

### 3. *Lesser Included Offenses*

■ Spencer claims that the trial court erred by failing to instruct the jury *sua sponte* on lesser included offenses of first degree murder. He cites *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), in which the Court struck down an Alabama statute which prohibited the trial court from instructing the jury on lesser included offenses of capital murder, even though supported by the evidence. He also relies on *State v. Vickers*, 129 Ariz. 506, 633 P.2d 315 (1981), in which this court interpreted *Beck* to require such instructions even when defense counsel fails to request them. The state argues that Spencer, by failing to request instructions on lesser included offenses, waived any objection to the court's failure to give them and urges us to revisit our holding in *Vickers* regarding the scope of *Beck*. We

need not reach this issue, however, because *Beck* requires that the jury be instructed on lesser included offenses only when there is some evidence of the commission of a lesser offense. *State v. Landrigan,* 176 Ariz. 1, 859 P.2d 111 (1993). *See State v. Dumaine,* 162 Ariz. 392, 403, 783 P.2d 1184, 1195 (1989). No such evidence exists in this case.

Spencer argues that the presence of a cut on his hand supports the inference that the victim attacked him with a knife and, therefore, the killing took place during a sudden quarrel or in the heat of passion and amounts only to manslaughter or second-degree murder. The inference that the victim was the aggressor in this case is simply too speculative and far-fetched to countenance in light of the overwhelming evidence that she was under Spencer's power for some hours prior to the killing and that the method in which the killing was accomplished was planned months before. In addition, the "evidence" that the victim carried a knife in her car was not offered at trial but was contained in a presentence report generated months later. There was simply no evidence presented at the trial to support an instruction on lesser included offenses. *See State v. Caldera,* 141 Ariz. 634, 637, 688 P.2d 642, 645 (1984).

### B. *Sentencing Issues*

A.R.S. § 13–703 contains Arizona's capital sentencing scheme. The state has the burden of proving beyond a reasonable doubt the existence of the aggravating circumstances contained in § 13–703(F). A.R.S. § 13–703(C); *State v. Jordan,* 126 Ariz. 283, 286, 614 P.2d 825, 828, *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). The defendant has the burden of proving by a preponderance of the evidence the existence of any mitigating factors. § 13–703(C); *State v. McMurtrey,* 143 Ariz. 71, 73, 691 P.2d 1099, 1101 (1984). We examine the trial court's findings and also conduct an independent re-view of the propriety of the sentence. *State v. White,* 168 Ariz. 500, 510, 815 P.2d 869, 879 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

### 1. *Aggravating Factors*

■ The trial court found that Spencer had previously been convicted of an offense for which life imprisonment was imposable, an aggravating factor under § 13–703(F)(1). The trial court made this finding on the basis of Spencer's prior conviction for armed robbery, a class two felony, committed with two prior convictions and while on probation.[1] Spencer argues that the trial court erred in finding this to be an offense for which life imprisonment was imposable, though he concedes that he did receive a life sentence for it and does not dispute the lawfulness of that sentence.

He notes that life imprisonment is not ordinarily imposable for armed robbery and argues that life sentences under A.R.S. § 13–604.02(A) (which imposes life sentences for dangerous offenses committed while on probation or parole) may not be considered under A.R.S. § 13–703(F)(1). He notes that § 13–604.02 was added after § 13–703(F)(1) and that we cannot know that the legislature intended sentences enhanced under § 13–604.02 to result in eligibility for the death penalty in the event of a later conviction for first-degree murder. In response, the state correctly points out that the legislature is presumed to know of existing law when it enacts a statute. *State v. Garza–Rodriguez,* 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990). Therefore, when the legislature enacted § 13–604.02, it presumably knew that anyone subject to the life sentence it created would be eligible to be sentenced to death for a subsequent first-degree murder conviction. Spencer presents no arguments or authority to overcome this presumption.

Spencer further argues that it is improper to use § 13–604.02 sentences to satisfy

---

1. Spencer argues that the trial court's finding is defective because the court did not specifically mention Spencer's release status at the time of the robbery, without which life imprisonment would not have been imposable. However, it is undisputed that the trial court, in its later discussion regarding the § 13–702(F)(2) aggravating factor, did find that the armed robbery had taken place while Spencer was on probation. Spencer's argument is without merit.

§ 13–703(F)(1) because doing so requires examination of the nature of the actual conviction (e.g., findings of dangerousness and release status) rather than merely the elements of the offense. But Spencer does not dispute the fact that he was lawfully sentenced to life imprisonment under § 13–604.02. Thus, in this case, he was actually "convicted of another offense ... for which under Arizona law a sentence of life imprisonment ... was imposable." § 13–703(F)(1). Because it was imposed, it was imposable, and we need not reach his argument that in some other case resort to factors beyond the conviction and sentence may be urged.

■ The trial court further found that Spencer was previously convicted in Arizona of two separate offenses—robbery and armed robbery—involving the use or threat of violence against a person. A.R.S. § 13–703(F)(2). The trial court properly found that the statutory definitions of these offenses necessarily involve the use or threat of violence against a person (see *State v. Romanosky*, 162 Ariz. 217, 228, 782 P.2d 693, 704 (1989); A.R.S. §§ 13–1902 and 13–1904) and Spencer does not challenge this on appeal. He points out, however, that the armed robbery conviction is the same one used to satisfy § 13–703(F)(1), discussed above. This court has held that a prior robbery conviction may constitute both the § 13–703(F)(1) and (F)(2) aggravating factors, but may be weighed only once when balancing aggravating and mitigating factors. *State v. Tittle*, 147 Ariz. 339, 345, 710 P.2d 449, 455 (1985). Spencer claims that, because the trial court failed to properly balance the various factors, it is impossible to tell whether it gave the armed robbery conviction double weight. This argument is without merit. As we discuss below, because the trial court found no mitigating factors, no balancing was required. Without mitigating factors, there is no weighing and, therefore, no double weighing.[2]

■ Spencer next argues that the trial court erred in finding that the murder was committed in expectation of pecuniary gain. A.R.S. § 13–703(F)(5). In order for this aggravating circumstance to be valid, pecuniary gain must be a motive, cause or impetus and not merely the result of the murder. *State v. Greenway*, 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991) (cause). *State v. LaGrand*, 153 Ariz. 21, 35, 734 P.2d 563, 577 (1987) (motive). *State v. Smith*, 146 Ariz. 491, 503, 707 P.2d 289, 301 (1985) (impetus). Spencer withdrew all the funds from the victim's bank account and sold her car. He admitted that he was waiting at the convenience store as part of his scheme to steal a car. There can be no reasonable doubt that pecuniary gain was at least one of the motives for the murder and not merely an afterthought. The trial court properly found this to be an aggravating factor.

■ Finally, Spencer argues that the trial court erred in finding that the murder was committed in an especially heinous, cruel or depraved manner. A.R.S. § 13–703(F)(6). Because the statutory expression is in the disjunctive, a finding of any one of these factors is sufficient to establish this aggravating circumstance. *State v. Gretzler*, 135 Ariz. 42, 51, 659 P.2d 1, 10, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Cruelty involves the mental and physical pain suffered by the victim while heinous or depraved refer to the perpetrator's vile state of mind at the time of the murder as indicated by his words and actions. *Id.* Because we find that the murder was heinous or depraved, we need not decide whether it was committed in a cruel manner.

■ Factors indicating heinousness or depravity include the senselessness of the crime as well as needless mutilation of the victim's body. *Id.* at 52, 659 P.2d at 11. The murder in this case was senseless in that, although carried out to aid Spencer's successful completion of the theft, it was unnecessary to accomplish it. *See State v.*

2. The Court "shall impose a sentence of death if the court finds one or more of the aggravating circumstances ... and that there are no mitigating circumstances sufficiently substantial to call for leniency." A.R.S. § 13–703(E).

*Comer*, 165 Ariz. 413, 429, 799 P.2d 333, 349 (1990), *cert. denied*, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 460 (1991); *State v. Correll*, 148 Ariz. 468, 481, 715 P.2d 721, 734 (1986). Spencer had taken Johnson–Morrow's money and was in control of her car—and of her—some time before the murder. There was no reason to kill except to fulfill his depraved plot.

In all events, after he raped and stabbed the victim he doused her with an accelerant and set her on fire. Spencer does not attempt to argue that this was not needless mutilation. This alone supports the finding of heinousness or depravity.

### 2. *Mitigating Factors*

The trial court stated that it found no statutory mitigating factors and, indeed, none were urged in Spencer's sentencing memorandum. The defense urged four non-statutory mitigating factors, only one of which—Spencer's medical problems—was discussed in the trial court's special verdict. The trial court concluded that there was nothing in Spencer's medical history which would serve as mitigation, "nor has the Court found anything presented by the defendant which would call for leniency." Special Verdict at 8.

Spencer's objection to the trial court's mitigation findings is apparently threefold. First, he argues that the trial court erred in failing to find any mitigating factors. Next, he argues that the trial court erred by failing to even consider the non-statutory mitigating factors argued by the defense. Finally, he argues that the trial court's statement regarding the absence of mitigating factors, quoted above, is ambiguous, and that the court may have found some mitigating factors but improperly weighed each one individually against the aggravating factors to determine if it warranted leniency. He argues that this uncertainty requires a remand.

■ Although the trial court was required to consider all evidence offered in mitigation, it was not required to separately discuss, in the special verdict, each circumstance claimed to be mitigating, and

each argument made by the defense. *See State v. McCall*, 160 Ariz. 119, 125, 770 P.2d 1165, 1171 (1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990). *See also State v. Kiles*, 175 Ariz. 358, 857 P.2d 1212 (1993). To suggest otherwise places form over substance. The trial court stated that it considered the sentencing memorandum submitted by defense counsel, and there is no reason to believe that it failed to do so.

Nor do we find the trial court's findings ambiguous. The record is clear. The court found that the factors presented by Spencer were not mitigating at all. The court never reached the balancing stage of the inquiry. *See State v. Zaragoza*, 135 Ariz. 63, 70, 659 P.2d 22, 29, *cert. denied*, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983) (court first determines whether mitigating factors exist and then whether they are sufficiently substantial to call for leniency in light of the aggravating factors). Having found four aggravating and no mitigating factors, the court imposed the death sentence as expressly required by A.R.S. § 13–703(E). *See State v. Arnett*, 158 Ariz. 15, 21, 760 P.2d 1064, 1070 (1988). The only issue is whether the trial court properly found no mitigating circumstances.

Spencer listed four circumstances which he claimed to be mitigating: his good behavior at trial, evidence of an alibi that was not admitted at trial, his confession which illustrated his willingness to cooperate with the police, and his medical problems. We agree with the trial court that none of these factors constitutes a mitigating circumstance in this case.

■ Spencer's good behavior at trial says nothing about his character, tendencies, or rehabilitative potential. It is not "relevant in determining whether to impose a sentence less than death," A.R.S. § 13–703(G), and does not constitute a mitigating factor.

■ The alibi evidence is the hearsay statement of a person who worked at the motel where he claimed to have been stay-

ing the weekend of the murder.[3] The person could not be located at the time of trial and the defense sought to introduce the person's statement pursuant to the "residual" exceptions to the hearsay rule, Rules 803(24) and 804(b)(5), Ariz.R.Evid. The trial court found that the statement did not possess circumstantial guarantees of trustworthiness and refused to admit it. Indeed, there were a number of circumstances which illustrated the *un*reliability of the statement.[4] The correctness of this decision is not disputed. The excluded statement goes to the issue of Spencer's guilt rather than to the propriety of the death sentence. It does not constitute a mitigating circumstance.

 Spencer's confession to the police following his arrest also does not constitute a mitigating circumstance. The confession concerned only the theft of the car, not the murder, and was offered only after he was confronted with the existence of a videotape of the sale of the victim's car. It conflicts with other explanations he gave and clearly was not motivated by a desire to cooperate with authorities.

 Likewise, we agree with the trial court that Spencer's medical problems, the fourth factor offered in mitigation, do not constitute a mitigating circumstance. Spencer does not explain why his postincarceration illnesses were relevant in deciding whether a sentence less than death is appropriate. We can think of no reason why they should be considered.

 Spencer argues for the first time on appeal that his history of substance abuse constitutes a mitigating factor. He claims that the trial court erred in failing to consider *sua sponte* evidence of his substance abuse. His claims are meritless for several reasons. First, there was some

mention of Spencer's drug use in the presentence report. Therefore, nothing indicates that the court failed to consider his drug use. Second, there is no indication in the record as to why his drug use should be considered a mitigating factor. Nothing in the evidence or in Spencer's briefs on appeal indicates that his drug use significantly impaired his capacity to conform his conduct to the requirements of the law (*see State v. Rossi (Rossi II)*, 154 Ariz. 245, 251, 741 P.2d 1223, 1229 (1987)) or that he was impaired by drug use on the night in question. Spencer has the burden of proving that his drug use constituted a mitigating factor. He has failed to carry that burden.

### 3. *Constitutional claims*

 Spencer argues that his right to equal protection under the Fourteenth Amendment was violated when he was denied a jury trial on the existence of aggravating factors. He points to jury determination of the existence of similar factors, such as dangerousness, prior convictions, and release status, in non-captial cases. *Compare* A.R.S. § 13–703(B) *with* A.R.S. § 13–604(K). We rejected this argument in *State v. Landrigan*, 176 Ariz. 1, 859 P.2d 111 (1993).

 Finally, Spencer argues that the Arizona capital punishment scheme violates the Eighth Amendment because the aggravating factors listed in A.R.S. § 13–703(F) fail to genuinely narrow the class of defendants who are eligible for the death penalty. We rejected this argument as well. *Id. State v. Greenway*, 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991).

### DISPOSITION

We have examined the record for fundamental error as required by A.R.S. § 13–

---

**3.** This person, when interviewed on May 21, 1989, told the police that Spencer checked into the motel at 2:00 a.m. on the morning of May 20, the approximate time the murder took place.

**4.** The motel employee claimed that she remembered the time at which Spencer checked in because she looked at the clock. However, the room where she would have been working at 2:00 a.m. did not contain a clock. The registra-

tion card did not state the time of registration. It did, however, contain two dates—May 19th and 20th—leading to some confusion over the date on which Spencer checked in. The description given by the employee of the clothing worn by Spencer that night did not match the description given by other witnesses and corroborated by the ATM photos.

4035 and find none. For the above reasons, we affirm Spencer's convictions and sentences.

FELDMAN, C.J., and ZLAKET, J., concur.