935 P.2d 891

**STATE of Arizona, Appellee,**

v.

**David Michael SCHWARTZ, Appellant.**

**No. 1 CA–CR 96–0098.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 5, 1996.

Review Denied April 29, 1997.

314

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel Criminal Appeals Section, and Randall M. Howe, Assistant Attorney General, Phoenix, for Appellee.

David M. Schwartz, Fort Grant, In Propria Persona.

## OPINION

VOSS, Judge.

David M. Schwartz (defendant) appeals from his convictions and sentences on one count of illegally conducting an enterprise, one count of keeping a house of prostitution, and two counts of enticement of a person for the purposes of prostitution. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In early 1994, defendant rented a house and a building behind the house at 1040 East Indian School Road in Phoenix. Defendant was the sole proprietor of several companies operating from that address, including "D and D Swingers," "D and D Publishing," "Dream Girls Modeling and Casting," and "The Unknown."

Defendant generated revenue at the location from two distinct activities, both of which he advertised in newspapers. During the day, the business arranged photograph and videotape "sessions" with customers and defendant's employees. These "sessions" required defendant's employees to engage in a range of activities with a varying price for the customer. Depending on the customer, such activities included modeling in the nude, acts of masturbation, sexual acts with other employees, and engaging in sexual acts, including sexual intercourse, with the customer. Defendant set the price range at $100 to $300 per hour, depending on the type of activity the patron desired.[1]

Defendant's "swingers'" parties were the second source of income from his business. Defendant charged men $35, couples $25, and women were admitted free of charge if they wore lingerie. At these parties, customers watched defendant's pornographic videos, obtained drinks from defendant's bartender, and could engage in sexual acts with other customers or defendant's employees. Testimony revealed that defendant would pay women to attend the parties, would "set up" customers with his employees, and would personally collect the fee from the customer for the sexual acts performed by defendant's employees.

Defendant had several employees that served roles vital to the businesses' operation. Receptionists arranged the photo/video shoots, worked the door at the "swingers'" parties, and collected the requisite fees. The bartender served drinks to patrons and the security guards patrolled the parking lot to insure safety. Debbie Lauhoff, defendant's girlfriend, assisted defendant in managing the affairs of the house and supervised the cash intake. Other employees were asked to partake in the photo/video "sessions" and have sex with the customers.[2] Further, defendant encouraged his employees to recruit more women for defendant's businesses, promising payment to successful recruiters.

Defendant testified that he used the proceeds from both the photo/video "sessions" and the "swingers'" parties to pay rent and utilities. Further, defendant acknowledged that he used these proceeds to pay his employees, either directly or through room and board.

In April 1994, the Phoenix Police Department received an anonymous tip about defendant's activities, whereupon the department engaged in a five month investigation. Undercover Detective Steffani McMichael was the primary investigator on the case and met defendant for the first time on April 20, 1994. Defendant explained the "swingers'" parties to her and offered to pay her $100 a night to attend. After Detective McMichael told de-

---

1. Although testimony indicated that defendant did not personally accept the customers' money for his employees' sexual acts, the record does reveal that defendant instructed his employees to procure "tips" directly from the customers and pass them along to defendant.

2. In July 1994, one such employee, Tina Buffet, responded to an advertisement in the paper looking for models. At the outset, defendant hired Tina to answer the phones and make appointments, promising prompt advancement in her modeling career. One week after Tina started, defendant asked Tina to have sex with customers for money, forwarding a percentage of the proceeds to defendant. Although Tina declined to engage in such activity, defendant continued to persist until Tina left defendant's employ.

fendant that she was in the escort business, defendant searched McMichael for a wire and made the first of many "business" propositions to the detective. Defendant told McMichael that he could send her and her friend (Detective Michelle Anderson) to Las Vegas, where he would arrange that they have sex for money. In this pursuit, defendant had McMichael speak on the telephone with a man defendant purported to be his Las Vegas connection.

McMichael visited defendant's establishment on at least five more occasions and was greeted with yet more propositions. First, defendant informed McMichael that he received forty to fifty "outcalls," where individuals wanted escorts to come to them, and asked McMichael if she would be interested in taking the calls for a fee. Alternatively, defendant suggested that McMichael operate her escort service out of his house, stating that her escorts could "hang out and hit men up for whatever." For this, defendant recommended two types of payment methods. First, defendant suggested that McMichael and her escorts pay him $35 for every customer brought to the house, and McMichael could keep the "tips." Later, however, to avoid any prostitution problem, defendant suggested that McMichael have sex with defendant periodically as payment.

Other undercover officers were involved in the operation and testified about the activities of the house at trial. Officers Sterling and Sechez reported that defendant's models engaged in acts of masturbation and sexual acts with each other for payment. Detective Lundberg was offered beer by defendant's employees, was explained the purposes of the rooms, and witnessed individuals engaging in sexual intercourse.

Finally, Eric Reed, defendant's employee and patron, testified that he paid for sex at least five times at defendant's house. Further, Reed testified that defendant arranged several of those encounters.

On September 12, 1994, the Maricopa County Grand Jury indicted defendant on one count of illegally controlling an enterprise; one count of keeping a house of prostitution; four counts of pandering; and four counts of enticement of a person for purposes

of prostitution. Because the state was unable to locate two witnesses, the state dismissed one count of pandering and one count of enticement of a person for purposes of prostitution. Before trial, the state moved to amend the indictment to charge defendant with one count of illegally conducting an enterprise, alleging that it was a lesser-included offense of illegally controlling an enterprise. Defendant did not object and the trial court granted the state's motion.

Defendant stipulated to a bench trial. At the conclusion of the testimony, the trial court found defendant guilty of one count of illegally conducting an enterprise, one count of keeping a house of prostitution, and two counts of enticement of a person for purposes of prostitution.

On January 22, 1996, the trial court sentenced defendant to a mitigated term of 2 years imprisonment for illegally conducting an enterprise, .5 year imprisonment for keeping a house of prostitution, and .33 year for each conviction of enticement of a person for prostitution purposes, the sentences to run concurrently.

## DISCUSSION

Defendant timely appealed from his convictions and sentences, raising three issues. First, defendant contends that the trial court abused its discretion in denying his motion for directed verdicts of acquittal. To support this, defendant argues that the state did not prove essential elements and did not present substantial evidence for convictions. Second, defendant argues that the state's amendment to the original indictment was prejudicial. Finally, defendant challenges the constitutionality of the statutes under which he was convicted.

## I. DENIAL OF JUDGMENTS OF ACQUITTAL

A judgment of acquittal is appropriate when no substantial evidence exists to support a conviction. *State v. Spencer*, 176 Ariz. 36, 41, 859 P.2d 146, 151 (1993); *State v. Walker*, 181 Ariz. 475, 478, 891 P.2d 942, 945 (App.1995). "Substantial evidence is more

than a mere scintilla" of evidence; it is evidence that reasonable persons could find adequate to sustain a conviction beyond a reasonable doubt. *Walker,* 181 Ariz. at 478, 891 P.2d at 945 (citing *State v. Jones,* 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)). In applying this standard, the court views the evidence in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against the defendant. *Spencer,* 176 Ariz. at 41, 859 P.2d at 151. Accordingly, this court will not reverse a conviction if substantial evidence exists in support of it. *Id.*

### A. Illegally Conducting an Enterprise

Defendant first argues that the prosecution failed to prove the elements essential to illegally conducting an enterprise. More to the point, defendant asserts that since he was the sole proprietor of the operation, no enterprise existed and thus the trial court erred as a matter of law in failing to direct a verdict of acquittal.

Arizona Revised Statutes section (A.R.S. § ) 13–2312(B) provides:

A person commits illegally conducting an enterprise if such person is employed by or associated with any enterprise and conducts such enterprise's affairs through racketeering or participates directly or indirectly in the conduct of any enterprise that the person knows is being conducted through racketeering.

Hence, the state must allege and prove the existence of an enterprise in order to establish a violation of A.R.S. § 13–2312(B). *See Baines v. Superior Court,* 142 Ariz. 145, 148, 688 P.2d 1037, 1040 (App.1984). An "enterprise" is defined as:

any corporation, partnership, association, labor union, or other legal entity or any group of persons associated in fact although not a legal entity.

A.R.S. § 13–2301(D)(2).

 This court has expressly held that a legal entity must be distinct from the defendant for the entity to constitute an enterprise for the purposes of A.R.S. 13–2312(B). *State v. Ivanhoe,* 165 Ariz. 272, 798 P.2d 410 (App. 1990). Therefore, a sole proprietorship standing alone cannot constitute an enterprise. *Id.* at 273–74, 798 P.2d at 411–12. However, in *Ivanhoe,* we did not address whether the same person can be the defendant and one of a group of individuals associated in fact to form an enterprise. *Id.* at 275, 798 P.2d at 413.

Because this question is one of first impression in Arizona and because Arizona adapted its racketeering act from the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 through 1968 (RICO), we "look to federal decisional law for guidance in construing and applying the Arizona statute." *Baines,* 142 Ariz. at 148, 688 P.2d at 1040.

The Supreme Court held that a group of individuals associated in fact for "wholly unlawful" purposes could constitute an enterprise within the plain meaning of RICO. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). According to the Court, an associated-in-fact enterprise exists where the organization is ongoing and the various associates function as a continuing unit. *Id.* at 583, 101 S.Ct. at 2528.

In applying this holding, we recognize a split of authority among the circuits. *Compare United States v. Benny,* 786 F.2d 1410 (9th Cir.) (sole proprietor defendant may associate with others to create association-in-fact), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986), *with Entre Computer Centers v. FMG of Kansas City, Inc.,* 819 F.2d 1279 (4th Cir.1987), *overruled on other grounds, Busby v. Crown Supply,* 896 F.2d 833 (4th Cir.1990). The Fourth Circuit applied a bright line rule prohibiting the defendant from combining with others to form an enterprise. *Entre,* 819 F.2d at 1287; *see also United States v. Computer Sciences Corp.,* 689 F.2d 1181 (4th Cir.1982) (holding that corporation cannot be both the enterprise and the defendant), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Bennett v. United States Trust Co.,* 770 F.2d 308, 314–15 (2d Cir.1985) (same), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). These cases require that the enterprise be separate and distinct from the defendant even in association-in-fact cases, expressing that the defendant cannot

associate with himself. *Entre*, 819 F.2d at 1287.

However, a majority of the federal circuits have departed from the Fourth Circuit's reasoning, concluding that the same person could be the defendant and associate with other individuals to create an enterprise for purposes of RICO. *See Davis v. Mutual Life Insurance Company*, 6 F.3d 367, 378 (6th Cir.1993) (RICO contains no requirement that defendant be removed from corporation), *cert. denied*, 510 U.S. 1193, 114 S.Ct. 1298, 127 L.Ed.2d 650 (1994); *United States v. Perholtz*, 842 F.2d 343 (D.C.Cir.) (individuals within a corporation may associate in fact), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); *Benny*, 786 F.2d at 1414–16; *Schofield v. First Commodity Corporation of Boston*, 793 F.2d 28, 29 (1st Cir.1986) (under RICO, employees in corporation may associate in fact); *McCullough v. Suter*, 757 F.2d 142 (7th Cir.1985) (sole proprietorship and employees constitute association-in-fact); *United States v. Thevis*, 665 F.2d 616, 625–26 (5th Cir.) (any group of individuals may constitute an association-in-fact), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). These courts recognized that the enterprise—not the business entity is the association among the individuals. *Perholtz*, 842 F.2d at 353. Therefore, it follows that if through various actions the sole proprietor associates with others in furtherance of common objectives, association-in-fact exists for purposes of an enterprise under RICO. *Id.* This is true regardless whether the "person" is separate and distinct from the sole proprietorship because the separateness requirement is not implicated when the prosecution alleges association-in-fact. *Id.* The only relevant factors under these circumstances are the actual activities of the participants—the very definition of *association*-in-fact. *Id.*

We find this latter approach persuasive. We agree that the relationship whereby individuals, including sole proprietors, associate with one another to further common objectives of illegality is precisely what RICO, and its Arizona counterpart, were developed to attack. Accordingly, we adopt the approach adopted by the majority of the federal circuits, finding that a sole proprietor can associate with other individuals to create an enterprise for purposes of A.R.S. § 13–2312.

■ Here, defendant associated with Debbie Lauhoff, Randi Marshall, Tina Buffett, a bartender, security personnel, Eric Reed, and unidentified others, each performing an assigned role in furtherance of a common objective—money for sex. Defendant provided the house from which the operation ran and arranged for his employees to have sex with customers for the requisite fee, which defendant set. Tina made appointments for photo/video "sessions," where Debbie, Randi, and others engaged in illegal sexual acts for a fee. The receptionist collected the entrance fees for the "swingers' " parties, while defendant and Debbie were responsible for taking larger payments. Defendant also recruited and offered to pay women to attend the parties. The proceeds from these illicit acts went to pay the operation's overhead and pay the employees. Further, defendant associated with these individuals for a continuous period, which was only disturbed when authorities discovered the operation.

*Ivanhoe* makes clear that defendant's businesses cannot alone constitute an enterprise. 165 Ariz. at 275, 798 P.2d at 413. However, as discussed above, defendant's association with others in furtherance of a common objective can and does constitute an enterprise for purposes of A.R.S. § 13–2312(B). Because there is substantial evidence that defendant associated with others in an organized and continuous manner, and the enterprise conducted its affairs through racketeering, the trial court properly denied defendant's motion for a directed verdict of acquittal.

### B. Maintaining a House of Prostitution

■ Defendant next argues that the evidence was insufficient to convict him under A.R.S. § 13–3208(B), which provides: "A person who knowingly operates or maintains a house of prostitution or prostitution enterprise is guilty of a class 5 felony."

Several witnesses testified that they observed what amounted to acts of prostitution in defendant's house and that defendant

managed the operation. Tina testified that defendant asked her to have sex with customers in exchange for money. Further, she witnessed defendant collecting money for such acts performed by other employees. Randi, another of defendant's employees, testified that she had sexual intercourse with a customer and that she engaged in sexual acts with other employees, all for money that was paid to defendant. Eric testified that on at least five occasions, he paid to have sex with women at defendant's house. Detective McMichael testified that defendant encouraged her to operate an escort service from defendant's house, where the women could "hit men up for whatever."

Although defendant argues that the state's witnesses were not credible, we must view the facts in the light most favorable to sustaining the conviction. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). With this in mind, we conclude that substantial evidence existed that defendant maintained a house of prostitution. Accordingly, the trial court properly denied defendant's motion.

### C. Enticement for Purposes of Prostitution

Defendant contends that substantial evidence does not support his convictions for enticing Tina Buffet and Detective McMichael into a house of prostitution. We disagree.

The offense of enticement requires proof that defendant knowingly entices another into a house of prostitution for the purpose of prostitution. A.R.S. § 13–3201. In *State v. Cook,* we defined "entice" as meaning to tempt or to lure. 139 Ariz. 406, 408, 678 P.2d 987, 989 (App.1984). Like solicitation, enticement does not require that the victim engage in what the enticer intends. A.R.S. § 13–3201; *see State v. Tellez,* 165 Ariz. 381, 383, 799 P.2d 1, 3 (App.1990); *see also State v. Jannamon,* 169 Ariz. 435, 438, 819 P.2d 1021, 1024 (App.1991) (violation of statute does not always require resultant effect on victim).

Here, defendant enticed both Tina and Detective McMichael into his house of prostitution for purposes of prostitution. With respect to Tina, defendant placed a "modeling" advertisement in the newspaper, attracting Tina to his establishment. Within one week of her work as a receptionist, defendant began asking Tina to have sex with customers. Upon her refusal, defendant persisted in his requests until Tina voluntarily terminated her employment. Defendant engaged in similar conduct with Detective McMichael by encouraging her to operate her escort business from the house in exchange for sex and/or money, offering her $100 a night to attend the parties, and offering to fly her and her friend to Las Vegas to exchange sex for money.

Defendant contends that because Tina and McMichael never engaged in prostitution, the state failed to prove enticement. Further, defendant asserts that the state failed to show that prostitution was his dominant motive in recruiting the two. We reject defendant's arguments. As discussed above, A.R.S. § 13–3201 does not require that the victims engage in the activity defendant prescribes. *See Tellez,* 165 Ariz. at 383, 799 P.2d at 3. In properly turning our focus to defendant's intent, we conclude that substantial evidence existed to find that defendant knowingly enticed both Tina and McMichael into a house of prostitution for the purpose of prostitution. Thus, the trial court properly denied defendant's motion.

### II. Amended Indictment

Defendant next argues that the amended indictment, with respect to Count I (illegally conducting an enterprise), was prejudicial and should have been dismissed. Defendant claims that the amendment was improper without his consent and deprived him of the proper notice.

The purpose of an indictment or information is to give notice of the offense charged so that the accused may prepare a defense. *State v. West,* 176 Ariz. 432, 442–43, 862 P.2d 192, 202–03 (1993). Although a person cannot be convicted of an offense not charged against him through indictment or information, the trial court can amend an indictment upon an oral motion by the state if the defendant does not object. *State v.*

**320**

*Sanders,* 115 Ariz. 289, 564 P.2d 1256 (App. 1977). Further, the indictment need only contain a notice of the charges—not the prosecution's theory under which it will proceed at trial. *West,* 176 Ariz. at 443, 862 P.2d at 203.

■ In this case, prior to the presentation of evidence, the state moved to amend the indictment to charge defendant with violating A.R.S. § 13–2312(B) instead of A.R.S. § 13–2312(A). After the court inquired, defendant's counsel did not object to the amendment, thus waiving any argument that such amendment deprived defendant of notice.[3]

### III. Constitutionality

■ Finally, defendant argues for the first time on appeal that the statutes under which he was convicted are overbroad, in violation of the First Amendment to the United States Constitution. As defendant did not present these arguments to the trial court, we decline to address them on appeal. *State v. Takacs,* 169 Ariz. 392, 399, 819 P.2d 978, 985 (App.1991).

### CONCLUSION

For the aforementioned reasons, we affirm the convictions and sentences imposed below. We have not reviewed the record for fundamental error. *State v. Smith,* 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996).

SULT, P.J., and EHRLICH, J., concur.

---

**3.** Notably, however, both the original and amended indictment contain the language from which defendant claims surprise. Both A.R.S. § 13–2312(A) and A.R.S. § 13–2312(B) refer to an "enterprise," which can be proven as a legal entity or an association-in-fact. *See* A.R.S. § 13–2301(D)(2).