NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MONTEZ LAVELL WRIGHT, III, *Appellant.*

No. 1 CA-CR 19-0251

FILED 5-28-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-005699-001
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

_____

**G A S S**, Judge:

¶1          Montez Lavell Wright, III, appeals his convictions and sentences for 11 counts, including two counts of first-degree murder. For the following reasons, this court affirms.

## FACTUAL AND PROCEDURAL HISTORY

¶2          This court reviews the facts in the light most favorable to sustaining the jury's verdicts, resolving all reasonable inferences against Wright. *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015). This court does not weigh the evidence or assess witness credibility, because those are jury functions. *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004); *State v. Salman*, 182 Ariz. 359, 361 (App. 1994).

¶3          In early 2016, Wright met Andrew Lauro while they were working for a landscaping company. Because of money problems, Wright and Lauro developed a plan to burglarize a house in the retirement community where their employer had them doing landscaping work.

¶4          On Sunday, the day before the burglary, Wright and his then-wife, Tichinia Shephard, met with Lauro and finalized a plan to commit a burglary the next day. The plan was to drive around on Monday morning until they selected a house with an open garage door. According to their plan, Wright and Lauro would enter the house, and Wright would hold the victims at gunpoint while Lauro tied them up. Shephard was to drive the getaway car.

¶5          Later on Sunday, Shephard created a "Stripe" account. A Stripe account can be used for companies to move money around to different bank accounts. Shephard's Stripe account, purportedly for a wig business, was registered using Shephard's phone, and was linked to her email address. The Stripe account was subsequently linked to two bank accounts, one belonging to Shephard and one belonging to Wright.

¶6        On Monday morning, when Wright and Lauro were scheduled to work, Wright, Lauro, and Shephard drove around the retirement community to search for houses to rob. They identified a house with an open garage door. A homeowner, A.D., saw the three park near his house, watched Wright and Lauro put on their work vests, and approach his open garage door. A.D. closed his garage door and called the police.

¶7        The three left and within minutes, came across another open garage door at B.L.'s home a few blocks away. Wright and Lauro went into the house through the garage. Shephard stayed in the car.

¶8        When Wright and Lauro entered the house, B.L.'s friend, R.S., was reading a newspaper. Wright told her "it's a stick up." Wright then shot her. Hearing the disturbance, B.L. came out of a bedroom, and Wright also shot her. Wright then shot R.S. a second time as she was about to use her cell phone. Both victims died.

¶9        Wright and Lauro stole the victims' purses and fled in B.L.'s SUV. They met Shephard at a nearby church. Wright realized he had dropped his cell phone at B.L.'s home, and he returned to retrieve it but was unable to do so. Wright abandoned B.L.'s SUV in Avondale. Later, Wright and Shephard made several transactions using the victims' credit cards with the Stripe account they had created the day before.

¶10       The next day, police went to B.L.'s home for a welfare check and discovered the victims. Police found Wright's cell phone and recovered his DNA from it. Police soon located B.L.'s stolen SUV and found Wright's DNA on the steering wheel. B.L.'s iPad was inside her vehicle, and Wright's DNA was on it as well. Using cell phone records for Wright and Shephard, police established they were in the immediate area of B.L.'s home before and after the murders.

¶11       The State charged Wright with two counts of first-degree murder,[1] one count of first-degree burglary, one count of theft of means of transportation, one count of attempted first-degree burglary, one count of fraudulent schemes and artifices, one count of attempted fraudulent

---

[1] Shephard was jointly prosecuted with Wright. In Shephard's case counts 1 and 2 were charges for felony murder based on accomplice liability. *See* A.R.S. §§ 13-1105.A.2, 13-301.

schemes and artifices, one count of aggravated taking identity of another, one count of computer tampering, and two counts of theft of credit card.

¶12            Lauro pled guilty to felony murder.[2] Wright and Shephard went to trial. Under the terms of his plea deal, Lauro testified against Wright and Shephard and received a life sentence with the possibility of parole on the murder. After a 12-day trial, the jury convicted Wright and Shephard as charged.

¶13            The superior court sentenced Wright to serve the sentence for the first, first-degree murder conviction concurrently with the sentences for first-degree burglary, theft of means of transportation, and attempted first-degree burglary, for which Wright was given 1,160 days presentence incarceration credit (Counts 1, 3, 4, and 5). The longest sentence in this group is natural life in prison on the first count of first-degree murder.

¶14            The superior court sentenced Wright to serve the sentence for the second, first-degree murder conviction concurrently with the sentences for fraudulent schemes and artifices, attempted fraudulent schemes and artifices, aggravated taking identity of another, computer tampering, and two counts of theft of credit card but consecutively to the sentences on Counts 1, 3, 4, and 5. The longest sentence in this group is natural life in prison on the second count of first-degree murder.

¶15            Wright timely appealed. This court has jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, 13-4031, and 13-4032.A.1.

## ANALYSIS

**I.      The superior court did not err by admitting evidence of Wright's other acts.**

¶16            Wright argues the superior court erred by admitting evidence of his other acts under Rule 404(b) of the Arizona Rules of Evidence. This court reviews "the admission of prior act evidence under Rule 404(b) for abuse of discretion." *State v. Beasley*, 205 Ariz. 334, 337, ¶ 14 (App. 2003).

---

[2] Lauro entered a "free talk" agreement with the prosecution in which he agreed to testify against Wright and Shephard for a lesser sentence.

¶17    Generally, evidence of a person's character "is not admissible for the purpose of proving action in conformity therewith." *See* Ariz. R. Evid. 404(a). Yet, "evidence of other acts may be admissible under Rule 404(b) to show proof of 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *State v. VanWinkle*, 230 Ariz. 387, 393, ¶ 21 (2012) (quoting Ariz. R. Evid. 404(b)).

¶18    Four "protective provisions" control the admission of other act evidence: (1) the evidence must be admitted for a proper purpose; (2) the evidence must be relevant; (3) the superior court may exclude evidence when its probative value is substantially outweighed by the potential for unfair prejudice under Rule 403; and (4) if requested, the superior court must give a proper limiting instruction. *State v. Lee,* 189 Ariz. 590, 599 (1997). "Unfair prejudice means an undue tendency to suggest decision on an improper basis . . . such as emotion, sympathy or horror." *State v. Schurz,* 176 Ariz. 46, 52 (1993) (quotation omitted). "Rule 403 weighing is best left to the trial court and, absent an abuse of discretion, will not be disturbed on appeal." *State v. Spencer*, 176 Ariz. 36, 41 (1993). In addition, "the profferer must prove by clear and convincing evidence that the prior bad acts were committed and that the defendant committed the acts." *State v. Terrazas*, 189 Ariz. 580, 582 (1997) (emphasis omitted). "Whether evidence is sufficient to be clear and convincing is for the trial court and its findings will not be disturbed unless as a matter of law no one could reasonably find the evidence to be clear and convincing." *Stevenson v. Stevenson*, 132 Ariz. 44, 46 (1982).

¶19    Before trial, the State sought to introduce evidence of Wright's following other acts to show his motive, intent, and identity: (1) stealing (with Lauro) a hedge trimmer from the landscaping company and pawning it; and (2) Wright's unsuccessful attempt to cash a stolen check in an amount over $36,000. Wright committed both acts within a week of the crimes at issue here. The State argued "the murder was not committed in a vacuum. It was the culmination of a week where the defendants became increasingly worried about money and their criminal behavior intensified." Wright objected. After oral argument, the superior court granted the State's motion.

¶20    Specifically, the superior court found the other act evidence was offered for a permissible purpose of establishing "the defendants' motive and intent to rob houses in Surprise due to financial desperation," to prove identity, and to rebut a mere presence defense. The superior court acknowledged the evidence was prejudicial but found the prejudice did not substantially outweigh its probative value. At trial, the State

presented the evidence, and the superior court gave the jurors a proper limiting instruction.

¶21 Wright argues the superior court erred by finding the evidence was relevant and offered for a proper purpose. This court disagrees. The State contended Wright planned to commit the burglary because of financial concerns. The State demonstrated Wright's financial difficulties by offering evidence showing Wright and Shephard had moved to Arizona a month earlier to stay with a friend, N.M., but no longer had a place to live. Within a few weeks of their arrival, N.M. was evicted, and Wright and Shephard moved in with N.M.'s neighbors. The neighbors told Wright and Shephard they had to move out by early February. Shephard was pregnant and did not have a job. Wright had been working at the landscaping business for only a few weeks, earning $9 an hour. While staying with the neighbors, Wright asked their daughter if she knew how to cash a check online. He also asked her if she wanted to make money by robbing "old people" where Wright worked.

¶22 Lauro's testimony reinforced the State's theory about Wright's motive and plan. Lauro testified he met Wright when Wright began working for the landscaping company, and Wright soon told Lauro he needed money because he was going to be homeless. Lauro testified he and Wright stole the hedge trimmer and pawned it for $80. Lauro also testified Wright stole the check from a mailbox while at work, and the two tried to cash it. Lauro told the jury he and Wright then came up with a plan to rob houses in the retirement community by "act[ing] like [they] were going to work" dressed in "regular work clothes and everything."

¶23 Though Wright contended the evidence was admitted improperly, he did not dispute his participation in the acts. At trial, Wright testified and told the jurors he and Lauro sold the hedge trimmer and he attempted to cash the stolen check after he "washed" it. The record, therefore, supports the superior court's finding the evidence was relevant and probative of proper non-propensity purposes, including Wright's financial motive, intent, opportunity, and plan. *See State v. Hargrave*, 225 Ariz. 1, 8, ¶ 14 (2010) ("[M]otive is relevant in a murder prosecution.").

¶24 Wright further contends the other act evidence was unduly prejudicial. The superior court expressly rejected his argument, and this court defers to the superior court's Rule 403 determination. *See Spencer*, 176 Ariz. at 41; *State v. Mott*, 187 Ariz. 536, 545-46 (1997) ("Not all harmful evidence . . . is unfairly prejudicial."). This court discerns nothing in the

record to overcome this deference. Unlike the charged offenses, the other acts did not involve violence or a burglary. Because the charged offenses were far more egregious than the other acts, this court cannot conclude the evidence of nonviolent thefts would have an "undue tendency to suggest decision on an improper [propensity] basis" for first-degree murder and first-degree burglary charges. *See Schurz*, 176 Ariz. at 52; *see State v. Via*, 146 Ariz. 108, 122 (1985) (any potential error from admitting evidence of a prior drug deal "was harmless as dealing with conduct far less egregious than that with which the defendant was charged.").

¶25        In addition, the superior court instructed the jurors they could consider the other acts only to establish "identity, motive, or intent, and/or whether the defendants were merely present." This instruction prevented any unfair prejudice as a result of admitting the evidence. *State v. Villalobos*, 225 Ariz. 74, 80, ¶ 20 (2010). Accordingly, the superior court acted well within its discretion by admitting the evidence.

## II.        Sufficient evidence supports Wright's convictions.

¶26        Wright next argues the superior court erred by denying his motion for judgment of acquittal under Rule 20 of the Arizona Rules of Criminal Procedure. Specifically, Wright challenges the sufficiency of the evidence supporting the murder and burglary convictions solely on Lauro's credibility. With respect to the remaining convictions, Wright admitted to the jury he committed the fraud, credit card theft, computer tampering, and identity theft offenses. In closing argument, Wright's counsel told the jurors Wright only contested the murder, burglary, and car theft charges. This court reviews *de novo* the sufficiency of the evidence supporting a conviction and the superior court's denial of a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).

¶27        The superior court must enter a judgment of acquittal if "there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *West*, 226 Ariz. at 562, ¶ 16 (emphasis original). Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013) (quotation omitted). This court considers the entire record in its review of the superior court's

ruling on a Rule 20 motion, including evidence admitted after the ruling. *See State v. Nunez*, 167 Ariz. 272, 279 (1991).

¶28          Lauro testified he and Wright came up with a plan to rob houses in B.L.'s community, they invaded B.L.'s home, and Wright shot the victims. At the conclusion of the State's case, Wright moved for a judgment of acquittal, contending it did not present substantial evidence for the murder and burglary charges because "the only person that can place Mr. Wright at the scene and within the victim's home is Mr. Lauro" and Lauro "confirmed on the stand that he's a . . . liar." The superior court found the State presented substantial evidence to warrant a conviction for each count "notwithstanding credibility issues which might be something for the jury's consideration" and denied the Rule 20 motion.

¶29          On appeal, Wright reasserts his challenges to Lauro's credibility, arguing Lauro's testimony was biased, unsubstantiated, and contradicted. Determining Lauro's credibility, however, is entirely "within the province of the jury." *See State v. Boggs*, 218 Ariz. 325, 335, ¶ 39 (2008). This court, therefore, "will not second-guess the jury's decision." *State v. Cid*, 181 Ariz. 496, 501 (App. 1995).

¶30          Wright's counsel extensively cross-examined Lauro about his veracity and bias, and specifically questioned Lauro about the terms of his plea agreement and benefits he received as a cooperating witness. Lauro conceded he lied "441 times." Wright's counsel attacked Lauro's credibility throughout closing argument and proposed to the jurors "there's absolutely no conceivable way you can believe—can or should believe anything that Andrew Lauro said." Likewise, the State placed Lauro's credibility squarely before the jury: in closing argument, the prosecutor said, "I told you in opening statement, do not believe a word Mr. Lauro says unless you can verify it with the other records." The jurors, therefore, fully considered Wright's challenges to Lauro's testimony and rejected them. *See State v. Manzanedo*, 210 Ariz. 292, 293, ¶ 3 (App. 2005) (resolving conflicts in testimony is the jury's role).

¶31          Wright claims the "case rested on [Lauro's] testimony." A reasonable juror could have found Wright guilty of the murder and burglary charges based on Lauro's testimony alone. *See id*. The State, however, offered significant evidence to corroborate Lauro's testimony: Wright's cell phone was found in B.L.'s home with his DNA on it; Wright's DNA was on the steering wheel of B.L.'s SUV and her iPad; bank records showed Wright used the victims' credit cards shortly after the murders; phone records placed Wright near B.L.'s home around the time

of the murders; and A.D. saw Wright, Lauro, and Shephard near B.L.'s home minutes before the murders.

¶32        Finally, though Wright denied committing the burglary, he admitted to the jury he drove to the retirement community with Lauro and Shephard and he acknowledged A.D. saw them. He also admitted the cell phone found in B.L.'s home was his, but said he had recently sold it to Lauro. Cell phone records, however, showed the cell phone was in Wright's apartment early in the morning on the day of the murders. And, Wright's DNA was found in B.L.'s stolen SUV. Therefore, the State presented substantial evidence to support the convictions, and the superior court properly denied Wright's Rule 20 motion and permitted the jury to determine his guilt. *See Lee*, 189 Ariz. at 615 (when evidence points to differing results, the superior court "has no discretion to enter a judgment of acquittal.").

**CONCLUSION**

¶33        For the above reasons, this court affirms Wright's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA

9