IN THE SUPREME COURT OF ARIZONA

STATE OF ARIZONA,                   )   Supreme Court
                                    )   No. CR 98-0376-AP
                Appellee,           )
                                    )   Maricopa County
            v.                      )   Superior Court
                                    )   No. CR-93-08116
                                    )
DARREL PETER PANDELI, aka           )
DARREL PETER FLORIAN,               )   **SUPPLEMENTAL**
                                    )   **O P I N I O N**
                Appellant.          )
_____)

Appeal from the Superior Court in Maricopa County
No. CR-93-08116
The Honorable Gregory H. Martin, Judge

**REMANDED FOR RESENTENCING**

---

Janet Napolitano, Attorney General                        Phoenix
    by      Kent E. Cattani, Chief Counsel,
            Capital Litigation Section
    and     Robert L. Ellman, Assistant Attorney General
    and     James P. Beene, Assistant Attorney General
    and     John P. Todd, Assistant Attorney General
    and     Bruce M. Ferg, Assistant Attorney General       Tucson
Attorneys for State of Arizona

Julie S. Hall                                              Tucson
    and
Arizona Capital Representation Project                     Tucson
    by      Jennifer Bedier
Attorneys for Darrel Peter Pandeli aka
Darrel Peter Florian

---

McGregor, Vice Chief Justice

¶1          Defendant Darrel Peter Pandeli (Pandeli) was convicted by

a jury of first degree murder and was sentenced to death by the trial judge. The case came before us on direct review, pursuant to Rules 26.15 and 31.2 of the Arizona Rules of Criminal Procedure and Arizona Revised Statutes (A.R.S.) section 13-4031 (2001).

¶2       This court filed an opinion affirming Pandeli's conviction and death sentence. *State v. Pandeli*, 200 Ariz. 365, 26 P.3d 1136 (2001). The United States Supreme Court vacated the judgment and remanded for further consideration in light of *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002) (*Ring II*). *Pandeli v. Arizona*, __ U.S. __, 122 S. Ct. 2654 (2002) (mem.). The *Ring II* decision does not affect our original opinion with respect to factual, procedural, and guilt issues, so we need not reconsider those portions of our original opinion. In this supplemental opinion, we reconsider Pandeli's sentence in light of *Ring II*.

## I.

¶3       In *Ring II*, the United States Supreme Court held that Arizona's former capital sentencing scheme[1] violates the right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution. *Ring II*, 536 U.S. at __, 122 S. Ct. at 2443. The Court declared that "[c]apital defendants, no less than non-capital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum

---

[1]     The legislature has since amended A.R.S. § 13-703. See 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.

punishment." *Id*. at __, 122 S. Ct. at 2432. The Court reversed our decision in *State v. Ring*, 200 Ariz. 267, 25 P.3d 1139 (2001) (*Ring I*), and remanded for further proceedings consistent with its decision. *Ring II*, 536 U.S. at __, 122 S. Ct. at 2443.

¶4 Following the Supreme Court's *Ring II* decision, we consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate to determine whether *Ring II* requires this court to reverse or vacate the defendants' death sentences. In *State v. Ring*, __ Ariz. __, __ ¶ 53, __ P.3d __, __ (2003) (*Ring III*), we held that we will examine a death sentence imposed under Arizona's superseded capital sentencing statutes for harmless error.

## II.

¶5 The State charged Pandeli with two counts of premeditated murder: count one for the murder of Teresa Humphreys and count two for the murder of Holly Iler. Pandeli murdered Humphreys more than a year before he murdered Iler. The trial court severed the two counts, which were tried before separate juries. In February of 1996, a jury convicted Pandeli of second degree murder for killing Teresa Humphreys. The trial court sentenced him to twenty years in prison.

¶6 In July of 1997, a jury convicted Pandeli of first degree murder for killing Holly Iler. Following the jury's verdict, the trial judge conducted a sentencing hearing to determine whether any

3

aggravating and mitigating circumstances existed.  A.R.S. § 13-703 (2001).    At  trial,  the  State  advanced  two  aggravating circumstances: (1) a previous conviction of a serious crime, A.R.S. section 13-703.F.2 (2001) and (2) the murder was committed in an especially heinous, cruel, or depraved manner. *Id*. § 13-703.F.6. The trial court found each factor beyond a reasonable doubt.

¶7        The F.2 aggravating circumstance applies if the state proves  beyond  a  reasonable  doubt  that  a  defendant  has  been convicted  of  a  serious  offense,  which  includes  second  degree murder. *Id*. § 13-703.F.2;[2] *Id*. § 13-703.H.1.   In 1996, a jury convicted  Pandeli  of  second  degree  murder  for  killing  Teresa Humphreys.  This aggravating circumstance falls outside the *Ring II* mandate.  The Sixth Amendment does not require a jury to determine the existence of an F.2 prior conviction.  *Ring III*, __ Ariz. at __ ¶¶ 63-64, __ P.3d at __.

¶8        To establish the F.6 aggravating circumstance, the state must prove that the manner in which a defendant killed the victim was especially heinous, cruel, or depraved.  A.R.S. § 13-703.F.6. The  state  needs  to  prove  only  *one*  of  the  heinous,  cruel,  or

---

[2]    The version of A.R.S. section 13-703.F.2 making a prior conviction "of a serious offense, whether preparatory or completed" an aggravating circumstance became effective on July  17, 1993. Pandeli murdered Holly Iler on September 23, 1993.   Thus, this version of the statute governed Pandeli's case.  A.R.S. § 1-246 (2002); *State v. Newton*, 200 Ariz. 1, 2 ¶ 3, 21 P.3d 387, 388 (2001) ("A basic principle of criminal law requires that an offender  be  sentenced  under  the  laws  in  effect  at  the  time  he committed the offense for which he is being sentenced.").

depraved factors for this aggravating circumstance to apply. *State v. Gretzler*, 135 Ariz. 42, 51, 659 P.2d 1, 10 (1983). The terms heinous and depraved refer to the "mental state and attitude of the perpetrator as reflected in his words and actions." *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896 (1980). Post-mortem mutilation indicates "a mental state that is 'marked by debasement'" and supports a finding of especially heinous or depraved. *See State v. Vickers*, 129 Ariz. 506, 515, 633 P.2d 315, 324 (1981).

¶9 At Pandeli's trial, the medical examiner testified that Iler's nipples were excised post-mortem, explaining that it took at least four strokes of a knife to sever the right nipple and at least two, possibly three, strokes to sever the left nipple. In his confession to the police, Pandeli admitted both to killing Iler and to removing her nipples after she died. According to Pandeli, he either threw the nipples in the garbage or flushed them down the toilet. Although the State did not present the confession during the guilt phase, the trial court admitted the confession into evidence during the sentencing phase. Given these overwhelming and essentially uncontroverted facts, the State can make a strong argument that no reasonable jury could fail to find the F.6 factor. *See Ring III*, __ Ariz. at __ ¶ 93, __ P.3d at __.

¶10 As we explained in *Ring III*, however, our harmless error inquiry does not end with considering aggravating circumstances.

5

*Id.* We also must consider whether reversible error occurred with respect to the mitigating circumstances. *Id.* The trial judge found no statutory mitigating circumstances and considered Pandeli's family background, his overall developmental history, his good behavior while incarcerated, his mental or emotional health, and remorse as non-statutory mitigating circumstances. The defense presented an expert who diagnosed Pandeli as suffering from paranoid schizophrenia and post traumatic stress disorder and testified that these disorders could have contributed to Pandeli's conduct. Although the State's expert strongly contradicted this testimony, we cannot say, beyond a reasonable doubt, that a reasonable jury hearing the same evidence as did the judge would have assessed the defense expert's testimony as did the judge and would have failed to find mental impairment, a statutory mitigating circumstance. A.R.S. § 13-703.G.1. A different finding of mitigating circumstances could affect the determination whether the mitigating circumstances are "sufficiently substantial to call for leniency." *Id.* § 13-703.E.

## III.

¶11     For the foregoing reasons, we cannot conclude that the *Ring II* error was harmless in this case. Accordingly, we vacate Pandeli's death sentence and remand for resentencing under A.R.S. sections 13-703 and 13-703.01 (Supp. 2002).

6

_____

Ruth V. McGregor, Vice Chief Justice

CONCURRING:


_____

Rebecca White Berch, Justice


_____

Michael D. Ryan, Justice


Jones, Chief Justice, specially concurring

**¶12**    I concur in the result. On the question whether harmless error analysis is appropriate in the case before us, see *State v. Ring*, __ Ariz. at __ ¶¶ 105-15, __ P.3d at __  (2003) (Feldman, J., concurring in part and dissenting in part).


_____

Charles E. Jones, Chief Justice

7