SUPREME COURT OF ARIZONA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-01-0100-AP |
| Appellee, | ) | |
| | ) | Pima County |
| v. | ) | Superior Court |
| | ) | No. CR-64663 |
| KAJORNSAK PRASERTPHONG, | ) | |
| | ) | |
| Appellant, | ) | **S U P P L E M E N T A L** |
| | ) | **O P I N I O N** |
| | ) | |
| | ) | |
| | ) | |

Appeal from the Superior Court in Pima County
The Honorable Michael Brown, Judge (Retired)

**REMANDED FOR RESENTENCING**

Janet A. Napolitano, Former Attorney General                    Phoenix
Terry Goddard, Attorney General
    By:  Kent E. Cattani, Chief Counsel,
        Capital Litigation Section
        Robert L. Ellman, Assistant Attorney General
        James P. Beene, Assistant Attorney General
        John P. Todd, Assistant Attorney General
        Monica B. Klapper, Assistant Attorney General   Phoenix
    and  Bruce M. Ferg, Assistant Attorney General       Tucson
Attorneys for Appellee

Susan A. Kettlewell, Pima County Public Defender        Tucson
    By:  Rebecca A. McLean, Assistant Public Defender,
        Lori J. Lefferts, Assistant Public Defender
Attorneys for Appellant

**R Y A N**, Justice

¶1      In September 2000, a jury convicted Kajornsak Prasertphong of three counts of first degree felony murder and three counts of armed robbery. Following the jury's verdict, the trial judge conducted a sentencing hearing to determine whether any

aggravating and mitigating circumstances existed. The judge found beyond a reasonable doubt the presence of two aggravating circumstances for each murder: 1) Prasertphong committed the murders with the expectation of pecuniary gain, Arizona Revised Statutes ("A.R.S.") section 13-703(F)(5) (Supp. 2002); and 2) Prasertphong committed multiple homicides under A.R.S. section 13-703(F)(8). The court found no mitigating factors "sufficiently substantial to call for leniency." A.R.S. § 13-703(E). Accordingly, the trial judge sentenced Prasertphong to death for two of the murders.

¶2     This court recently affirmed Prasertphong's convictions on direct review. *See State v. Prasertphong,* ___ Ariz. ___, ¶ 98, ___ P.3d ___ (2003). However, while Prasertphong's direct appeal was pending, the United States Supreme Court in *Ring v. Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428, 2443 (2002) (*Ring II*), held that Arizona's capital sentencing scheme violated a defendant's Sixth Amendment right to a jury trial.[1]

¶3     In holding that Arizona's capital sentencing scheme violates the right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution, the Supreme Court declared that "[c]apital defendants, no less than non-capital defendants . . . are entitled to a jury determination of any fact

---

[1]     The legislature amended the statute requiring judge-sentencing in capital cases. *See* 2002 Ariz. Sess. Laws, 5th Spec. Sess. ch. 1, § 1.

2

on which the legislature conditions an increase in their maximum punishment." *Id*. at 589, 122 S. Ct. at 2432. The Court reversed our decision in *State v. Ring*, 200 Ariz. 267, 25 P.3d 1139 (2001) (*Ring I*), and remanded for further proceedings consistent with its decision. *Ring II*, 536 U.S. at 609, 122 S. Ct. at 2443.

¶4 Following the Supreme Court's *Ring II* decision, we consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate to determine whether *Ring II* requires this court to reverse or vacate the defendants' death sentences. *State v. Ring*, 204 Ariz. 534, 544, ¶ 5, 65 P.3d 915, 925 (2003) (*Ring III*). In *Ring III*, we concluded that we will examine a death sentence imposed under Arizona's superseded capital sentencing statutes for harmless error. *Id*. at 552, 555, ¶¶ 44, 53, 65 P.3d at 933, 936.

¶5 As a result, we ordered the parties in this case to address the death penalty sentencing issues in supplemental briefs. *State v. Ring,* Order No. CR-97-0428-AP (July 17, 2002). Those briefs have been filed and we now examine whether the death penalties can stand in light of *Ring II*. Based on our review of the record, we cannot conclude that the *Ring II* violation constituted harmless error.

¶6 A detailed account of the facts of this case is set out in *Prasertphong*, ___ Ariz. at ___, ¶¶ 2 - 15, ___ P.3d at___. For purposes of this supplemental opinion, however, the essential facts

3

established that Prasertphong and his co-defendant, Christopher Huerstel, went to a Pizza Hut in Tucson. After eating, the two murdered the three employees, and took a bank bag and the debit card machine.

¶7    Because property was taken by force, the trial judge found that the murders were committed in expectation of pecuniary gain. *See* A.R.S. § 13-703(F)(5). We thus turn to whether harmless error occurred with respect to this aggravating factor.

¶8    Commission of an offense "as consideration for the receipt, or in expectation of the receipt . . . of anything of pecuniary value" is an aggravating circumstance. A.R.S. § 13-703(F)(5). To establish the pecuniary gain aggravating circumstance, the state must prove that "the expectation of pecuniary gain [wa]s a motive, cause, or impetus for the murder and not merely a result of the murder." *State v. Hyde,* 186 Ariz. 252, 280, 921 P.2d 655, 683 (1996) (citing *State v. Spencer,* 176 Ariz. 36, 43, 859 P.2d 146, 153 (1993)). In other words, there must be proof "that the murder would not have occurred but for the defendant's pecuniary motive." *Ring III,* 204 Ariz. at 560, ¶ 75, 65 P.3d at 941 (citing *State v. Harding,* 137 Ariz. 278, 296-97, 670 P.2d 383, 401-02 (1983) (Gordon, V.C.J., specially concurring)).

¶9    Proving a taking in a robbery or the existence of some economic motive at some point during the events surrounding a murder does not necessarily prove the motivation for a murder.

4

*State v. Medina,* 193 Ariz. 504, 513, 975 P.2d 94, 103 (1999); *State v. Greenway,* 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991). Rather, it is "a highly fact-intensive inquiry" requiring the state to prove a "connection between the murder and motive through direct or strong circumstantial evidence." *Ring III,* 204 Ariz. at 560, ¶ 76, 65 P.3d at 941 (citing *State v. Cañez*, 202 Ariz. 133, 159, ¶ 94, 42 P.3d 564, 590 (2002)). A murder committed in expectation of pecuniary gain is distinguished from a "robbery gone bad" or a "robbery that occurs close in time to a murder but that constitutes a separate event for the purpose of an [(F)(5)] determination." *State v. Sansing*, 200 Ariz. 347, 353-54, ¶ 14, 26 P.3d 1118, 1124-25 (2001) (citing *State v. McKinney*, 185 Ariz. 567, 584, 917 P.2d 1214, 1231 (1996)), *vacated on other grounds,* 536 U.S. 954 (2002). This court has also held that pecuniary gain is an aggravating factor if a "murder was committed to hinder detection" of a theft or robbery. *State v. Lee,* 185 Ariz. 549, 558, 917 P.2d 692, 701 (1996).

¶10    We will find harmless error affecting this factor only if we are convinced beyond a reasonable doubt that no reasonable jury could fail to find that the state proved pecuniary gain beyond a reasonable doubt. *Ring III*, 204 Ariz. at 560, ¶ 79, 65 P.3d at 941.

¶11    The trial judge determined that the murders were motivated by pecuniary gain because they were committed "to

5

facilitate the robbery of the Pizza Hut," a robbery that had previously been discussed and planned by Prasertphong and Huerstel. The court further found that "even if [Prasertphong's] statement that [he] personally abandoned the plan [wa]s believed," Prasertphong willingly participated in the killings, the robbery, and the escape from and cover up of those crimes. Thus, the court concluded that Prasertphong and Huerstel committed the murders for pecuniary gain.

¶12     However, other testimony and circumstantial evidence could support a finding that Prasertphong was unaware that Huerstel planned to kill the Pizza Hut employees, and that Prasertphong acted out of shock or panic after Huerstel had committed the murders. Although Prasertphong admitted that he tried to "snap" the neck of one of the employees, he also told the police that he could not go through with killing the employee. Additionally, some testimony and the ballistics evidence suggest that Huerstel was the only shooter.

¶13     Prasertphong also contends that his only participation in the crimes was as a "late joiner" in effort to cover up the fact that he was present at the Pizza Hut when the murders were committed. Although Prasertphong took the bank bag and the debit card machine, neither he nor Huerstel touched the cash register or the more than $340 in one victim's pockets. Conceivably then, as Prasertphong claims, a jury could reasonably have concluded that

6

the robbery that occurred here constituted "a separate event for the purpose of an [(F)(5)] determination." *Sansing*, 200 Ariz. at 353-54, ¶ 14, 26 P.3d at 1124-25. A jury could also find that this was a "robbery gone bad" and thus not find the pecuniary gain aggravating factor satisfied.

¶14 Therefore, in light of the conflicting evidence, we cannot say, beyond a reasonable doubt, that a jury hearing the same evidence as the trial judge would have interpreted the circumstantial evidence or assessed the witnesses' credibility as did the trial judge. Consequently, we conclude that the *Ring II* error as to the (F)(5) aggravating circumstance was not harmless.

¶15 Because three people were murdered, the trial court also found that the factor set forth in A.R.S. section 13-703(F)(8) was proven. This aggravating factor exists if "[t]he defendant has been convicted of one or more other homicides . . . which were committed during the commission of the offense." *Id*. To satisfy this factor, the state must "establish more than that the jury convicted the defendant of first degree murder and one or more other homicides occurring around the same time." *Ring III*, 204 Ariz. at 560, ¶ 80, 65 P.3d at 941. Instead, the homicides must be temporally, spatially, and motivationally related, taking place during "one continuous course of criminal conduct." *State v. Rogovich*, 188 Ariz. 38, 45, 932 P.2d 794, 801 (1997) (quoting *State v. Ramirez*, 178 Ariz. 116, 130, 871 P.2d 237, 251 (1994)).

7

¶16     We will find harmless error affecting this factor in those cases in which no reasonable jury could find that the state failed to prove the (F)(8) factor beyond a reasonable doubt. *Ring III*, 204 Ariz. at 561, ¶ 82, 65 P.3d at 942.

¶17     Overwhelming evidence established that the murders occurred during a short time, at the same place, and were part of a continuous course of criminal conduct. Nevertheless, Prasertphong argues that the (F)(8) aggravator does not apply to him because he "was not the killer, and did not share in Huerstel's motivation to kill the victims."

¶18     As mentioned earlier, the jury convicted Prasertphong of three counts of felony murder based on armed robbery and this court has affirmed those convictions. The armed robbery convictions satisfy the element of intent for the murders. A.R.S. § 13-1105(A)(2); *State v. Akins*, 94 Ariz. 263, 266, 383 P.2d 180, 182 (1963). Thus, the jury verdicts established that Prasertphong possessed the same motivation for killing the victims as did Huerstel. Moreover, "A.R.S. § 13-703(F)(8) does not require any mental state." *State v. Dickens,* 187 Ariz. 1, 25, 926 P.2d 468, 492 (1996). Because the armed robberies and murders were committed during a continuous course of criminal conduct, they were temporally, spatially, and motivationally related.

¶19     Based on the evidence offered at trial, any *Ring II* error as to the (F)(8) aggravator was harmless beyond a reasonable doubt

8

because we believe that no rational jury could have found differently than the trial judge did.

¶20 Our harmless error inquiry does not end with the aggravating circumstances. *Ring III*, 204 Ariz. at 563, ¶ 93, 65 P. 3d at 944. We must also consider whether reversible error occurred with respect to the mitigating circumstances. *Id.* The trial judge found Prasertphong's age, 19 at the time of the murders, as a statutory mitigating factor. *See* A.R.S. § 13-703(G)(5). The trial court also considered as non-statutory mitigating factors Prasertphong's lack of a prior criminal record, the emotional abuse he suffered as a young boy, his supportive family, his good employment record, his good courtroom demeanor and behavior in jail, and his assistance in saving the life of an inmate who attempted to commit suicide. The court rejected Prasertphong's claims that he was a minor participant in the crimes, that he could not foresee that his conduct would cause death, that there was residual doubt about his participation, that he cooperated with police, and that he felt remorse for his crimes. Based on those findings, the court found "beyond a reasonable doubt that there are no mitigating circumstances sufficiently substantial to call for leniency."

¶21 Prasertphong argues that a reasonable jury hearing the identical evidence could reach a different conclusion. He contends that the evidence supports his assertion that he was a minor

participant, that he was not the shooter, and that he cooperated with the police.  He points to physical evidence indicating that a bullet was fired from the restroom area, suggesting that Huerstel was the lone shooter.  And the detectives corroborated Prasertphong's cooperation with the investigation.  He also claims that a jury could reasonably view the evidence of his troubled childhood, his behavior in jail, and his family support differently than did the trial judge.

¶22      The State argues that "[t]he mitigation in this case pales in comparison to the extreme aggravation inherent in the cold-blooded murder of 3 innocent victims for the sole purpose of stealing money."  Nevertheless, the State concedes that under *Ring III*, this case must be remanded for resentencing.[2]  We accept the State's concession because we conclude that a reasonable jury could have viewed Prasertphong's mitigation evidence differently than did the trial judge and find one or more mitigating factors proven by a preponderance of the evidence.

¶23      As we have held previously, "[a] different finding of

---

[2]      The State filed a petition for certiorari in the United States Supreme Court challenging this court's position, as applied in *State v. Pandeli*, that under the Supreme Court's decision in *Ring II*, an analysis of harmless error at the sentencing phase of a capital trial must also "consider whether reversible error occurred with respect to the mitigating circumstances."  204 Ariz. 569, 572, ¶ 10, 65 P.3d 950, 953 (2003); *see also Ring III*, 204 Ariz. at 561-62, ¶¶ 87-90, 104, 65 P.3d at 942-43.  The State acknowledges that if the Supreme Court denies its petition for certiorari, *Ring III* requires resentencing.

10

mitigating circumstances could affect the determination whether the mitigating circumstances are 'sufficiently substantial to call for leniency.'" *State v. Pandeli*, 204 Ariz. 569, 572, ¶ 10, 65 P.3d 950, 953 (2003) (quoting A.R.S. § 13-703(E)).  Therefore, we hold that the *Ring II* violation with respect to the mitigating evidence was not harmless.

¶24    Because we cannot conclude that the sentencing procedure in this case resulted in harmless error, we vacate Prasertphong's death sentences and remand for resentencing by a jury under A.R.S. sections 13-703 and 703.01 (Supp. 2002).


_____
                                 Michael D. Ryan, Justice


CONCURRING:


_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice

**J O N E S**, C.J., concurring in part, dissenting in part:

¶25    I concur in the result, but I respectfully dissent from the majority's conclusion that harmless error analysis is appropriate where sentencing determinations are made by the trial judge in the absence of the jury.  The right to trial by an impartial jury is fundamental.  The sentencing phase is, of itself,

11

a life or death matter.  Where a judge, not a jury, determines all questions pertaining to sentencing, I believe a violation of the Sixth Amendment to the Constitution of the United States has occurred.  In the aftermath of the Supreme Court's decision in *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428 (2002) *(Ring II),* the absence of the jury in the sentencing phase of a capital trial necessarily amounts to structural error.  I would remand the case for resentencing, simply on the basis of the Sixth Amendment violation.  *See State v. Ring*, 204 Ariz. 534, 565-67, ¶¶ 105-14, 65 P.3d 915, 946-48 (2003)(Feldman, J., concurring in part, dissenting in part) (*Ring III*).

_____
Charles E. Jones, Chief Justice


Note:    Justice Hurwitz took no part in the consideration or decision of this case.