SUPREME COURT OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA | ) Arizona Supreme Court |
| | ) No. CR-01-0129-AP |
| Appellee/Cross-Appellant, | ) |
| | ) |
| v. | ) Maricopa County |
| | ) Superior Court |
| SHERMAN LEE RUTLEDGE, | ) No. CR1997-05555 |
| | ) |
| Appellant/Cross-Appellee, | ) |
| | ) **S U P P L E M E N T A L** |
| | ) **O P I N I O N** |
| | ) |
| | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Frank T. Galati, Judge

**REMANDED FOR RESENTENCING**

_____

Janet A. Napolitano, Former Arizona Attorney General       Phoenix
Terry Goddard, Arizona Attorney General
        By   Kent E. Cattani, Chief Counsel,
             Capital Litigation Section
        and  Robert L. Ellman, Assistant Attorney General
             James P. Beene, Assistant Attorney General
             John Pressley Todd, Assistant Attorney General
             Bruce M. Ferg, Assistant Attorney General       Tucson
Attorneys for Appellee

Robert W. Doyle                                             Phoenix
Attorney for Appellant

_____

**R Y A N**, Justice

**I.**

¶1        A jury convicted Sherman Lee Rutledge of armed robbery, first degree felony murder of Ryan Harris, and attempted second degree murder of Chase Clayton.  Following the jury's verdict, the

trial judge conducted a sentencing hearing to determine whether any aggravating and mitigating circumstances existed. The State alleged the existence of three aggravating factors: Rutledge had a previous conviction of a serious offense, Arizona Revised Statutes ("A.R.S.") section 13-703(F)(2) (Supp. 1996); Rutledge committed the murder for pecuniary gain, A.R.S. section 13-703(F)(5); and he committed the murder "in an especially heinous, cruel or depraved manner." A.R.S. § 13-703(F)(6). Before the sentencing hearing, the trial court ruled that the (F)(2) aggravating circumstance was not applicable because the attempted murder and armed robbery were committed contemporaneously with the murder.

¶2 After considering the evidence, the court found that the murder was not "especially cruel" or "especially heinous or depraved." A.R.S. § 13-703(F)(6). Therefore, the court concluded that the (F)(6) aggravating factor was not proved beyond a reasonable doubt. The judge did find beyond a reasonable doubt that Rutledge committed the murder with the expectation of pecuniary gain. A.R.S. § 13-703(F)(5). The court further found no statutory mitigating factors and no non-statutory mitigating factors "sufficiently substantial to call for leniency." A.R.S. § 13-703(E). The court thus sentenced Rutledge to death for the first degree murder conviction.

¶3 Because Rutledge received a death sentence, a mandatory

2

direct appeal was brought to this court.  Ariz. R. Crim. P. 26.15, 31.2;  A.R.S. § 13-4031 (2001).  The State cross-appealed the trial court's ruling on the (F)(2) aggravating factor.

¶4       We affirmed Rutledge's convictions and all sentences except the sentence of death on direct appeal.  *See State v. Rutledge*, 205 Ariz. 7, 16, ¶ 43, 66 P.3d 50, 59 (2003).  While Rutledge's direct appeal was pending, the United States Supreme Court in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002) (*Ring II*), held that Arizona's capital sentencing scheme violated a defendant's Sixth Amendment right to a jury trial.[1]

¶5       In holding that Arizona's capital sentencing scheme violates the right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution, the Supreme Court declared that "[c]apital defendants, no less than non-capital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."  *Id.* at 589, 122 S. Ct. at 2432.

¶6       Following the Supreme Court's *Ring II* decision, we consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate to determine whether *Ring II* requires this court to reverse or vacate the defendants' death

---

[1]    The legislature amended the statute requiring judge-sentencing in capital cases.  *See* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.

sentences. *State v. Ring,* 204 Ariz. 534, 545, ¶ 14, 65 P.3d 915, 926 (2003) (*Ring III*). In *Ring III*, we concluded that we will examine a death sentence imposed under Arizona's superseded capital sentencing statutes for harmless error. *Id*. at 555, ¶ 53, 65 P.3d at 936.

¶7     As a result, we ordered the parties in this case to address the death penalty sentencing issues in supplemental briefs. *State v. Ring*, Order No. CR-97-0428-AP (July 17, 2002). Those briefs have been filed and we now examine whether Rutledge's death sentence can stand in light of *Ring II*. In addition, the State filed a supplemental brief in support of its cross-appeal. Based on our review of the record, we cannot conclude that the *Ring II* violation constituted harmless error. We also conclude that the trial court did not err in striking the (F)(2) allegation.

## II.

¶8     Our previous opinion in this matter contains a detailed account of the underlying facts surrounding the crimes. *See Rutledge*, 205 Ariz. at 9-10, ¶¶ 2-12, 66 P.3d at 52-53. Briefly summarized, the evidence established that Rutledge shot Harris, killing him, and attempted to kill Clayton. After the shootings, Rutledge and his brother took the Ford Explorer Clayton had been driving.

¶9     In its special verdict, the trial court found that "the totality of the evidence, circumstantial as it may be, proves

4

beyond a reasonable doubt that pecuniary gain was the motive for these crimes." Commission of an offense "as consideration for the receipt, or in expectation of the receipt . . . of anything of pecuniary value" is an aggravating circumstance. A.R.S. § 13-703(F)(5).

¶10     To establish the pecuniary gain aggravating circumstance, the state must prove that "the expectation of pecuniary gain [wa]s a motive, cause, or impetus for the murder and not merely a result of the murder." *State v. Hyde,* 186 Ariz. 252, 280, 921 P.2d 655, 683 (1996) (citing *State v. Spencer,* 176 Ariz. 36, 43, 859 P.2d 146, 153 (1993)). In other words, there must be proof that "the murder would not have occurred but for the defendant's pecuniary motive." *Ring III,* 204 Ariz. at 560, ¶ 75, 65 P.3d at 941 (citing *State v. Harding,* 137 Ariz. 278, 296-97, 670 P.2d 383, 401-02 (1983) (Gordon, V.C.J., specially concurring)).

¶11     Proving a taking in a robbery or the existence of some economic motive at some point during the events surrounding a murder does not necessarily prove the motivation for a murder. *State v. Medina,* 193 Ariz. 504, 513, 975 P.2d 94, 103 (1999); *State v. Greenway,* 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991). Instead, it is "a highly fact intensive inquiry" requiring the state to prove a "connection between the murder and motive through direct or strong circumstantial evidence." *Ring III,* 204 Ariz. at 560, ¶ 76, 65 P.3d at 941 (citing *State v. Cañez*, 202 Ariz. 133,

5

159, ¶ 94, 42 P.3d 564, 590 (2002)).  A murder committed in expectation of pecuniary gain is distinguished from a "robbery gone bad" or a "robbery that occurs close in time to a murder but that constitutes a separate event for the purpose of an [(F)(5)] determination."  *State v. Sansing*, 200 Ariz. 347, 353-54, ¶ 14, 26 P.3d 1118, 1124-25 (2001) (citing *State v. McKinney,* 185 Ariz. 567, 584, 917 P.2d 1214, 1231 (1996)), *vacated on other grounds*, 536 U.S. 954 (2002).

**¶12**    We will find harmless error affecting this factor only if we are convinced beyond a reasonable doubt that no reasonable jury could fail to find that the prosecution proved pecuniary gain beyond a reasonable doubt.  *Ring III*, 204 Ariz. at 560, ¶ 79, 65 P.3d at 941.

**¶13**    The State asserts that "[t]he evidence was uncontroverted that the victims were lured to the park on the pretext of obtaining drugs, and when they arrived, Rutledge . . . attacked [the victims] and stole the new Ford Explorer."  But the State presented no specific testimony or evidence that Rutledge's motive for the killing was pecuniary gain.  One witness did testify that Rutledge told her that "something is going down."  And another testified that one of the victims said "if you want it you can have it," apparently referring to the Ford Explorer.

**¶14**    The trial court found that even "[t]he somewhat contradictory references to what was expected to occur at the scene

6

of the crime . . . bolster[ed] the conclusion that" Rutledge committed the murder to take the vehicle. Nonetheless, because the trial court's finding rests in part on an assessment of witness credibility, "[w]e cannot say, beyond a reasonable doubt, that a jury hearing the same evidence as did the judge would have interpreted the circumstantial evidence or assessed the witnesses' credibility as did the judge." *State v. Hoskins*, 204 Ariz. 572, 574, ¶ 6, 65 P.3d 953, 955 (2003). Therefore, we conclude that the *Ring II* error as to the (F)(5) aggravating circumstance was not harmless.

## III.

¶15    The State's cross appeal asks us to reverse the trial court's determination that because the attempted murder and armed robbery were committed contemporaneously with the murder, the aggravating factor under A.R.S. section 13-703(F)(2) could not be applied. Although we remand this matter for resentencing, we address this issue because the (F)(2) factor "falls outside the *Ring II* mandate. The Sixth Amendment does not require a jury to determine the existence of an [(F)(2)] prior conviction." *State v. Pandeli*, 204 Ariz. 569, 571, ¶ 7, 65 P.3d 950, 952 (2003) (citing *Ring III*, 204 Ariz. at 558, ¶¶ 63-64, 65 P.3d at 939). Consequently, if the State is correct, on remand, a jury determination on this factor would not be required. *Id*.

¶16    Section 13-703(F)(2) requires proof that "[t]he defendant

7

was previously convicted of a serious offense, whether preparatory or completed." According to the State, "the statute by its unambiguous wording requires [sic] has only two requirements: First, a previous conviction, and second, the conviction be for a 'serious offense.'"[2] The State thus contends that a "serious offense" committed in the course of committing a murder can satisfy the (F)(2) factor. The only limitation is that the conviction for the serious offense must be rendered before sentencing on the murder. *See e.g.*, *State v. Finch*, 202 Ariz. 410, 417, ¶ 33, 46 P.3d 421, 428 (2002) (holding that "[c]onvictions entered simultaneously with the murder conviction but prior to sentencing satisfy [(F)(2)].").

¶17 The trial court in this case agreed that the State's argument "ma[de] good sense," but rejected the State's position for the following reasons: (1) *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1 (1983), is contrary to the State's position and was this court's most definitive pronouncement on the issue; (2) if the legislature had intended the (F)(2) aggravator to apply to serious crimes committed during the commission of a murder it could have expressly said so in the statute;[3] (3) because one purpose of the

---

[2] A "serious offense" includes second degree murder and robbery. *See* A.R.S. § 13-703 (H)(2), (8).

[3] On May 26, 2003, the legislature amended A.R.S. section 13-703(F)(2) to explicitly provide that a "serious crime" committed contemporaneously with the murder is sufficient for aggravation under A.R.S. section 13-703 (F)(2). *See* 2003 Ariz. Sess. Laws, 1st

8

(F)(2) aggravator is to measure a defendant's propensity to commit serious crimes, "[i]t is rational to measure such propensity by the number of other times one has engaged in such conduct rather than by the number of discreet [sic] serious crimes committed during the defendant's criminal conduct at the time of the subject murder;" and (4) the State's interpretation of the (F)(2) aggravating factor would broaden the class of death eligible defendants, contrary to the legislative intent to narrow that class of persons.

¶18        In support of its contention, the State relies on two cases, both of which we find distinguishable.  In the first, *State v. Rogovich,* the defendant was charged with four counts of first-degree murder, two counts of aggravated assault, two counts of armed robbery, and one count of unlawful flight from a law enforcement vehicle, all stemming from a series of events that took place during a killing spree that spanned several hours.  188 Ariz. 38, 40, 932 P.2d 794, 796 (1997).  The court held that the convictions for aggravated assault and armed robbery were "previous

_____

Reg. Sess., ch. 255, § 1.  That provision now states:

> The defendant has been or was previously convicted of a serious offense, whether preparatory or completed. Convictions for serious offenses committed on the same occasion as the homicide, or not committed on the same occasion but consolidated for trial with the homicide, shall be treated as a serious offense under this paragraph.

Because he committed the offenses before May 26, 2003, this amendment does not apply to Rutledge.

convictions" for purposes of (F)(2). *Id.* at 44, 932 P.2d at 800.

¶19    *Rogovich* differs from this case in two ways. First, Rogovich challenged only whether the timing of the convictions and the nature of the offenses satisfied the requirements of (F)(2). *See id*. Thus, Rogovich did not raise, nor did this court address, the specific issue we face here. Second, at least one aggravated assault conviction and one armed robbery conviction were committed separately from each murder. *See id.* at 40, 932 P.2d at 796. Accordingly, the facts in *Rogovich* supported the application of the (F)(2) factor with convictions for serious offenses that were committed separately from the murders, unlike the situation in this case.

¶20    In the second case the State cites, *State v. Jones,* the defendant was charged with six counts of first degree murder, three counts of aggravated assault, three counts of armed robbery, and two counts of first-degree burglary. 197 Ariz. 290, 297, ¶ 1, 4 P.3d 345, 352 (2000). The events that led to the charges arose out of two separate armed robberies that were committed on different dates at different places; two people were murdered during the first robbery, and four people during the second robbery. *Id.* at 297-98, ¶¶ 1-9, 4 P.3d at 352-53. Because the defendant was convicted of the serious offenses before he was sentenced for the murder convictions, the court held that each of the convictions for aggravated assault, armed robbery, and first degree burglary satisfied the (F)(2) aggravating factor. *Id.* at 311, ¶ 64, 4 P.3d

10

at 366.

**¶21** We find *Jones* distinguishable. Although not specifically explained by the court because the issue was not raised, the facts in *Jones* establish that a number of serious offenses were committed on different days and at different places. *See id*. at 297-98, ¶¶ 1-9, 4 P.3d at 352-53. Therefore, it can hardly be said that only serious offenses committed in conjunction with the murder were used to satisfy the (F)(2) aggravating factor.[4]

**¶22** Thus, neither *Rogovich* nor *Jones* directly addressed the specific issue presented in this case - whether a conviction for a serious offense arising out of the same event as a murder charge could be considered when determining the existence of the (F)(2) aggravating factor. We, however, addressed this issue in *State v. Phillips*, 202 Ariz. 427, 438, ¶ 56, 46 P.3d 1048, 1059 (2002).

**¶23** In *Phillips*, we held that convictions arising "from the same set of events as the murder charge . . . should not be considered when determining the existence of the [(F)(2)] factor."

---

[4] Referring to the trial court's special verdict in *Jones*, the State points out that the trial judge used all of the serious offenses to support its finding on the (F)(2) factor. And because in our independent review of the imposition of the death penalty this court affirmed the trial court's finding on the (F)(2) factor, the State draws the conclusion that we approved the use of contemporaneous serious offenses to satisfy (F)(2). However, we made no such holding. Instead, we focused on whether the offenses were entered before sentencing on the murders, and whether the murders were improperly "double-counted" in satisfying both (F)(1) and (F)(2). *Jones*, 197 Ariz. at 311, ¶ 64, 4 P.3d at 366.

11

*Id.* In support of that holding, the court cited a footnote from *Gretzler.* 135 Ariz. at 57 n.2, 659 P.2d at 16 n.2. In that footnote, the court, in explaining that a conviction for a serious offense entered before the sentencing hearing satisfied (F)(2), commented that it disapproved any language in *State v. Ortiz*, 131 Ariz. 195, 211, 639 P.2d 1020, 1036 (1981), "suggesting the contrary." *Gretzler,* 135 Ariz. at 57 n.2, 659 P.2d at 16 n.2. The court went on to state "[i]n *Ortiz*, we found the trial court erred in considering a contemporaneous conviction for conspiracy to commit murder as aggravation for the murder. *This exclusion from consideration is best understood as having been required because both convictions arose out of the same set of events."* *Id*. (emphasis added). The State argues that the emphasized language from *Gretzler* is dictum, and therefore not controlling. We disagree for the following reasons.

¶24 First, *Phillips* considered *Gretzler* as persuasive authority on this point. Second, the State has presented no compelling reason for us to overrule *Phillips*. *See State v. Hickman*, 205 Ariz. 192, 200-01, ¶¶ 37-38, 68 P.3d 418, 426-27 (2003) (explaining that respect for precedent requires that a court not overrule precedent unless there are compelling reasons to do so, and deference to precedent is strongest when prior decisions construe a statute). Third, the State has cited no case, nor have we found one, in which this court was faced with a situation in

12

which the (F)(2) factor was only supported by a serious offense committed contemporaneously with the murder. Fourth, because this issue has not arisen before (other than in *Ortiz* and *Phillips*), it appears that neither prosecutors nor judges have routinely interpreted (F)(2) in such a way that a serious offense committed in conjunction with the murder could support application of that factor. Finally, to hold as the State urges would mean that a number of prior death penalties could have been supported by an additional aggravating factor. *See, e.g., State v. Trostle,* 191 Ariz. 4, 17-18, 951 P.2d 869, 882-83 (1997) (Defendant convicted of felony murder based on armed robbery and kidnapping; the state apparently alleged pecuniary gain, A.R.S. section 13-703(F)(5), and that the murder was committed in an especially heinous, cruel, or depraved manner, A.R.S. section 13-703(F)(6), as aggravating factors, but not as previous serious convictions under A.R.S. section 13-703(F)(2)); *State v. Dickens,* 187 Ariz. 1, 23-25, 926 P.2d 468, 490-92 (1996) (Defendant convicted of felony murder based on armed robbery; the state appeared to have limited its allegations of aggravating circumstances to pecuniary gain, A.R.S. section 13-703(F)(5), that the murder was especially heinous, cruel, or depraved, A.R.S. section 13-703(F)(6), and multiple homicides, A.R.S. section 13-703(F)(8), but not previous serious convictions under A.R.S. section 13-703(F)(2)).

13

¶25    Accordingly, we hold that Rutledge's conviction for a "serious offense" occurring simultaneously with a murder conviction cannot be used for (F)(2) purposes under the version of A.R.S. section 13-703(F)(2) applicable to Rutledge.

## IV.

¶26    Because we hold that the sole aggravating factor in this case must be presented to a jury, we vacate Rutledge's death sentence and remand for resentencing.    Therefore we find it unnecessary to examine whether harmless error occurred with respect to the mitigating circumstances.  *See Ring III*, 204 Ariz. at 565, ¶ 104, 65 P.3d at 946 (holding that our harmless error inquiry does not end with the aggravating circumstances).  Moreover, the State concedes that if *Ring III* remains the law, this case must be remanded for resentencing.[5]

## V.

¶27    For the foregoing reasons, we cannot conclude that the *Ring II* error was harmless in this case.  Accordingly, we vacate Rutledge's death sentence, and remand for resentencing under A.R.S.

---

[5]    The State filed a petition for certiorari with the United States Supreme Court challenging this court's position, as applied in *Pandeli*, that under the Supreme Court's decision in *Ring II*, an analysis of harmless error at the sentencing phase of a capital trial must also "consider whether reversible error occurred with respect to the mitigating circumstances."  *Pandeli*, 204 Ariz. at 572, ¶ 10, 65 P.3d at 953; *see also Ring III*, 204 Ariz. at 561-62, 565, ¶¶ 87-90, 104, 65 P.3d at 942-43, 946.  The State acknowledges that if the Supreme Court denies its petition for certiorari, *Ring III* requires resentencing in this case.

sections 13-703 and 13-703.01 (Supp. 2002).


_____

                          Michael D. Ryan, Justice

CONCURRING:


_____

Ruth V. McGregor, Vice Chief Justice


_____

Rebecca White Berch, Justice

**J O N E S**, C.J., concurring in part, dissenting in part:

¶28      I concur in the result, but I respectfully dissent from the majority's conclusion that harmless error analysis is appropriate where sentencing determinations are made by the trial judge in the absence of the jury. The right to trial by an impartial jury is fundamental. The sentencing phase is, of itself, a life or death matter. Where a judge, not a jury, determines all questions pertaining to sentencing, I believe a violation of the Sixth Amendment to the Constitution of the United States has occurred. In the aftermath of the Supreme Court's decision in _Ring v. Arizona,_ 536 U.S. 584, 122 S. Ct. 2428 (2002) _(Ring II),_ the absence of the jury in the sentencing phase of a capital trial necessarily amounts to structural error. I would remand the case for resentencing, simply on the basis of the Sixth Amendment

15

violation.  *See State v. Ring*, 204 Ariz. 534, 565-67, ¶¶ 105-14, 65 P.3d 915, 946-48 (2003)(Feldman, J., concurring in part, dissenting in part) (*Ring III*).

_____

Charles E. Jones, Chief Justice

Note:    Justice Hurwitz took no part in the consideration or decision of this case.